**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:25-CV-00961-KDB-DCK**

| | |
|---|---|
| **KEVIN BERRY, individually and on behalf of a putative class,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**WESTERN CAROLINA PIZZA VENTURES, LLC,**<br><br>**Defendant.** | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on the Parties' Joint Motion for Settlement (Doc. No. 5). The Court has a fiduciary duty to carefully consider proposed class action settlements and has done so here, including hearing oral argument on the motion from the Parties' counsel on August 18, 2026. Because the Court finds that the proposed settlement is neither fair nor adequate, the Court will **DENY** the motion. In particular, the Court concludes that (1) notice to the putative settlement class is not the best practicable means to give notice because it lacks notice by email and the inability of class members to make claims electronically, rendering the filing of claims far less likely (as no doubt intended by the Parties); (2) the purported "total amount" of the settlement is a collusive fiction driven by the Parties' agreement on attorneys' fees rather than a compromise of the actual value of disputed claims; (3) the Court cannot determine based on the available record if the amount offered to class members is an adequate payment for their alleged harm; and (4) the amount of attorneys' fees is clearly excessive based on the lack of "success" achieved in the proposed settlement. By this ruling, the Court does not intend to discourage settlement; indeed, it

encourages the Parties to settle their dispute if they are able to do so fairly, with (on the Plaintiff's side) primary regard for the interests of the class members rather than their counsel.

## I. LEGAL STANDARD

A class action may not be settled without approval of the Court. Fed. R. Civ. P. 23(e); *see Williams v. PHH Mortg. Corp.*, No. 3:25-CV-00144-KDB-WCM, 2026 WL 1782163, at *1–2, *6 (W.D.N.C. June 22, 2026). Approval of a Federal Rule of Civil Procedure 23 class action settlement typically proceeds in two stages. At the first stage, the court examines the terms of the proposed settlement to determine whether it is within the range of possible approval, subject to further consideration at the final fairness hearing after interested parties have had an opportunity to object. *Brent v. Advanced Med. Mgmt., LLC*, 733 F. Supp. 3d 376, 380 (D. Md. 2024). Further, "[w]here a class-wide settlement is presented for approval prior to class certification, there must also be a preliminary determination that the proposed settlement class satisfies the prerequisites set forth in Fed. R. Civ. P. 23(a) and at least one of the subsections of Fed. R. Civ. P. 23(b)." *Id.* (citing Manual for Complex Litigation § 21.632 (4th ed. 2004) ("MCL")). At the second stage, after a final fairness hearing, "[i]f the proponents of the settlement [ ] satisf[y] their burden of showing that it is fair, adequate and reasonable, then the Court will approve the settlement." *Id.*

"The Rule 23 inquiry is certainly not meant to discourage settlement, but it is more than a rubber stamp[.]" *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013). "When the court reviews a proposed class-action settlement, it acts as a fiduciary for the class." *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471, 483-84 (4th Cir. 2020) (citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019). In this role, "the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion, and that the class members' interests were represented

adequately." *Sharp Farms*, 917 F.3d at 294 (quoting *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995) (cleaned up)). Further, the court must protect the class's interests from parties and counsel overeager to settle (who may deny absent class members relief that they would otherwise receive) and frivolous objectors (who may impede or delay valuable compensation to others). *1988 Tr. for Allen Child. Dated 8/8/88 v. Banner Life Ins. Co.*, 28 F.4th 513, 521, 525 (4th Cir. 2022) Ultimately, the court must conclude that a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *1988 Tr. for Allen*, 28 F.4th at 520-21; MCL, § 21.632.

Under Rule 23(e)(2), "[t]he fairness analysis is intended primarily to ensure that a 'settlement is reached as a result of good-faith bargaining at arm's length, without collusion.'" *Berry v. Schulman*, 807 F.3d 600, 614 (4th Cir. 2015) (alteration omitted) (quoting *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991)). The Fourth Circuit has identified four factors for determining a settlement's fairness, which are: (1) the posture of the case at the time settlement was proposed; (2) the extent of discovery that had been conducted; (3) the circumstances surrounding the negotiations; and (4) the experience of counsel in the area of class action litigation. *1988 Tr. for Allen*, 28 F.4th at 527 (citing *Lumber Liquidators*, 952 F.3d at 484).

With respect to adequacy, the Court considers the *Jiffy Lube* factors: (1) the relative strength of the case on the merits; (2) any difficulties of proof or strong defenses the plaintiff and class would likely encounter if the case were to go to trial; (3) the expected duration and expense of additional litigation; (4) the solvency of the defendants and the probability of recovery on a litigated judgment; and (5) and the degree of opposition to the proposed settlement. *Jiffy Lube*, 927 F.2d at 158; *see also Lumber Liquidators*, 952 F.3d at 484; *Berry*, 807 F.3d at 618 ("[T]he fact that only one of the approximately 200 million members of the ... Class objects ... is relevant to

our decision [upholding the settlement as fair, reasonable, and adequate].”). The primary concern is the “protection of class members whose rights may not have been given adequate consideration during the settlement negotiations.” *Jiffy Lube*, 927 F.2d at 158.

Approval of a class action settlement is committed to the “sound discretion of the district courts to appraise the reasonableness of particular class-action settlements on a case-by-case basis, in light of the relevant circumstances.” *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 663 (E.D. Va. 2001).

## II. FACTS AND PROCEDURAL HISTORY

Plaintiff Kevin Berry filed this putative class and collective action under the Fair Labor Standards Act (“FLSA”), 29 U.S.C. § 201 et seq.; the North Carolina Wage and Hour Act (“NCWHA”), N.C. Gen. Stat. §§ 95-25.1, et seq.; and the Indiana Minimum Wage Law Minimum, Ind. Code § 22-22-1, et seq., to recover unpaid minimum wages allegedly owed to him and similarly situated delivery drivers employed by Western Carolina Pizza Ventures, LLC (“Pizza Ventures”) at its Papa John’s stores. Doc. No. 1 ¶ 2. Specifically, Plaintiff claims that Pizza Ventures failed to pay its drivers’ automobile expenses to such an extent that its drivers’ net wages were diminished beneath the federal and state minimum wage rates. *Id.* ¶ 17.

Subject to Court approval, the Parties have agreed to settle these claims on a class and collective action basis, pursuant to Federal Rule of Civil Procedure 23 and Section 216(b) of the Fair Labor Standards Act (“FLSA”). To effectuate the settlement and distribute funds to settlement class members, the Parties request in the pending motion (Doc. No. 5) that the Court: (1) conditionally certify a FLSA collective action pursuant to Section 216; (2) certify a North Carolina and Indiana class action pursuant to Rule 23, for settlement purposes; (3) appoint Plaintiff Kevin Berry as Class Representative and appoint Forester Haynie, PLLC as Class Counsel; (4)

preliminarily find that the Parties' settlement appears to be fair, reasonable, and adequate as to the members of the class, subject to any objections that may be raised at the final fairness hearing and final approval of class settlement by this Court; (5) grant preliminary approval of the settlement; (6) approve as to form and content the Parties' proposed Class Notice and Claim Form as reasonable notice practicable under the circumstances and in full compliance with applicable law; (7) order that each Settlement Class Member be given a full opportunity to file a claim, object to, or opt-out of the Settlement, and to participate at the final approval hearing; (8) schedule a final approval hearing at least 100 days following the Court's Order; and (9) award such further relief as the Court deems equitable and just.

The Settlement Agreement (Doc. No. 6-1) defines the Settlement Class as: "All persons who worked as a delivery driver for Defendant from February 23, 2023, to [the date the Court grants Preliminary Approval of this Settlement]." There are approximately 280 class members. The total amount of the settlement is alleged to be $225,000, comprised of:

1. a "maximum" potential settlement fund of $130,000, with claims made paid "based on their miles driven according to Defendant's records," with a minimum payment of $40 a class member;
2. $75,000 in attorney's fees;
3. a $3000 Class Representative service fee;
4. a $12,000 Administrative Fund for settlement expenses; and
5. a $5000 Reserve Fund designated for the payment of late claims.

Settlement Class Members who do not submit a claim, but do not exclude themselves (opt-out) from the State Class Action, also will receive by check a payment of $40.00 to be paid out of the Settlement Fund, but will in turn be bound by the settlement and release, even if the check is not cashed. Any checks unclaimed after one hundred eighty (180) calendar days are to be held in the Reserve Fund to be available for late claimants for a limited period of time.

However, the effective amount of the agreed settlement payment is much lower than represented because the Settlement Agreement makes any payment above $52,000 fully discretionary to Pizza Ventures:

> To the extent that the payments from the FLSA Claim Fund (i.e., the aggregate Potential Settlement Payments owed to Authorized Claimants) listed on the Final Payment List exceeds 40% of the Net Settlement Fund (i.e., $52,000.00), Defendant has the right, in its sole discretion, to cancel the Agreement in its entirety.

Doc. No. 6-1 at 7.

With respect to notice, the Parties propose that a notice of collective action settlement (the "Notice") and claim form ("Claim Form") will be mailed to all putative class members as soon as practicable after the Court's preliminary approval. The Parties' proposed Notice purports to explain (1) the nature of the settlement, (2) the factors used to determine the amount each class member has been allocated under the settlement, and (3) each delivery driver's right to submit a claim form, object to the settlement, or exclude themselves from the settlement. However, potential class members are not told in the notice the range of how much they might reasonably recover in the settlement, even though Defendant has access to that information (i.e., the number of miles driven). The notice is not proposed to be sent electronically. After the Settlement Administrator sends the notice of preliminary approval and settlement to each class member, each of them would be given 50 days after mailing of the notice to submit – only by mail or fax machine – a claim form or objections or opt out.

## III. DISCUSSION

Ultimately, the court must conclude that a proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2); *1988 Tr. for Allen*, 28 F.4th at 520-21; MCL, § 21.632. As noted, in conducting this review, the Court acts as a fiduciary for the absent class members to ensure their interests are fully represented. *See Sharp Farms*, 917 F.3d at 294. This is an important

undertaking because "the very features of class actions that provide efficiency and consistency at the same time present serious risks, including the risk of due process violations." *Id.* at 305 (Concurrence of Quattlebaum, J.). Absent class members' claims are litigated not directly by the class members themselves but, in the most practical terms, by class counsel in the name of a representative plaintiff. And these class counsel may, of course, be mindful of their own pecuniary interests, which in some circumstances may not be fully aligned with the interests of the class. In effect, it falls to the Court to provide a fairness shield for absent class members who have much at stake but no seat at the settlement table.

As described above, the Court has both procedural and substantive concerns about the proposed settlement. Procedurally, the proposed method of providing notice and receiving claims is insufficient. Adequate notice involves constitutional as well as procedural components. *McAdams v. Robinson*, 26 F.4th 149, 157–59 (4th Cir. 2022) (approving a proposed plan for giving notice to a Settlement Class using e-mail and post cards, a publication/media program and establishment of a settlement website). To bind an absent class member, notice to the class must provide "minimal procedural due process protection"; that is, he or she must receive notice plus an opportunity to be heard and participate in the litigation. *Id.* The notice must be "reasonably calculated, under all the circumstances, to apprise [absent class members] of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). With respect to procedure, Federal Rule of Civil Procedure 23(e) governs notice to absent class members. It requires "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B).

The Court finds that the proposed notice, which does not include email or any other form of electronic notice, is not "reasonably calculated" under these circumstances to inform absent

class members about the settlement. Relying solely on mailed notice is unlikely to result in delivery of the notice to as many class members as the combination of email and mail notice that this Court and others routinely approve – in compliance with the requirements of Rule 23 and due process – as the best reasonable notice practicable under the circumstances. *See, e.g., Neal v. Wal-Mart Stores, Inc.*, No. 317CV00022KDBDCK, 2020 WL 6157779, at *2 (W.D.N.C. Oct. 19, 2020); *Roldan v. Bland Landscaping Co., Inc.*, No. 320CV00276KDBDSC, 2022 WL 17824035, at *5 (W.D.N.C. Dec. 19, 2022) (Noting that court-approved notices by email, text message, and first-class mail at their last known address had reached approximately 98% of the class members); *Black v. USAA Gen. Indem. Co.*, No. 21-CV-1581-LKG, 2025 WL 3637395, at *4 (D. Md. Dec. 16, 2025) (approving email, postcard and "longform" notice on a settlement website). Physical addresses can often change over time, particularly with respect to younger workers. In fact, Pizza Ventures described its pizza delivery drivers at oral argument as "transient employees." Therefore, a combination of email and mailed notice is most likely to result in actual notice to the class.

Indeed, the likelihood of actual notice is more important here because the proposed Settlement Agreement provides that class members who don't make claims or otherwise respond to the notice are nevertheless sent nominal $40 payments, which under the Agreement serve to bind them to the settlement and release, even if they don't cash their check. The Court is unwilling to permit a potential class member's rights to be foreclosed based only on a notice and check mailed to an address without any indication that the class member has accepted the payment as consideration for the release (or has even received the settlement notice).

As significant, if not more, is the failure of the proposed settlement to allow class members to file claims electronically, which is unreasonable and appears calculated solely to discourage claims. At oral argument, Plaintiff's counsel estimated that only 18-21% of class members

typically file claims within this settlement structure. Perhaps that is no surprise given that most workers, again particularly younger ones, rarely mail letters and depend almost entirely on electronic communications. And giving potential claimants an option to send their claims by "fax machine" is almost comical. Fax machines have been out of routine use for many years. Therefore, any claim process that truly intends to provide a reasonable opportunity for class members to file claims should include the opportunity to file electronically.

The substantive shortcomings of the proposed settlement are similarly numerous. First and foremost, the representation that the total amount of the settlement is $225,000 is simply not credible. Rather, it seems more appropriate to characterize the Agreement as, at most, a $52,000-$57,000 settlement fund plus agreed attorney's fees and settlement costs. In fact, when pressed at oral argument, the Parties acknowledged that the $52,000 amount was set with the expectation that settlement payments to class members would never reach that level. And it would likely not even be close. At a 20% claim rate and the average of $480 a class member Plaintiff's counsel suggested at oral argument (which is probably overstated in any event based on Defendant's counsel's hearing statements that numerous class members would be unlikely to qualify for more than the minimum $40 payment), the total settlement payment would be $26,880.[1]

There is no information in the record as to the total number of miles driven by class members or how that number would translate into potential claims. So, where does the $130,000 "maximum" settlement fund come from? While neither counsel acknowledged it directly at oral argument, it appears to the Court that the calculation of the number is simply the reverse

[1] Even if you further assume that Pizza Ventures voluntarily sends $40 checks to everyone who didn't file a claim to take advantage of the automatic release (which is likely) and that all of those checks are cashed (which is highly unlikely) then that would only add another $8,960 for a total payment to class members of $35,840.

engineered mathematical result of the Parties' agreement on attorney's fees and other costs. In other words, the Parties took their agreement on $75,000 in attorneys' fees, tripled it to $225,000 so that Plaintiff's counsel could claim they are receiving no more than a "one-third" fee, and then subtracted the attorney's fees, settlement expense, class representative fee and small "reserve fund" to get to $130,000. Plainly, manipulation of purported settlement amounts untethered to actual agreed payments to class members (which again are only likely to be in the range of $25,000 to $35,000) suggests the strong possibility of collusion among the Parties' counsel, which cannot (and will not) be sanctioned by this Court.

As discussed above, Courts have condensed the settlement review process into the question of whether the settlement is fair and adequate and identified various factors for both. *See CASA de Maryland, Inc. v. Arbor Realty Tr., Inc*., No. CV DKC 21-1778, 2023 WL 7089916, at *3 (D. Md. Oct. 26, 2023). "By far the most important factor is a comparison of the terms of the proposed settlement with the likely recovery that plaintiffs would realize if they were successful at trial." *Id.* (quoting *McDaniels v. Westlake Servs., LLC*, No. 11-cv-1837-ELH, 2014 WL 556288, at *8 (D. Md. Feb. 7, 2014) (citing *Jiffy Lube*, 927 F.2d at 158-59. However, the Parties have failed to give the Court any concrete information from which it can make this critical assessment. As just explained, the total settlement numbers are unrelated to any amount of actual claimed damages and there is no evidence or representations in the record that establish what Plaintiff says the class might recover if they were successful at trial (beyond the conclusory statement that the settlement is a great result for the class).

At oral argument, Defendant's counsel sought to justify the paltry amount of the expected settlement payments by arguing that Plaintiffs' claims were in fact worth very little because the substantive basis of the claims (that Pizza Ventures was required to reimburse delivery drivers at

the IRS mileage reimbursement rate) was unpersuasive, many drivers did not drive enough miles to be entitled to more than the $40 minimum payments and that as many as 70-80% of the class members had arbitration agreements that would prevent them from being members of the class. In other words, he argued that the class members were receiving little in the settlement because their claims had little merit (or were required to be pursued in arbitration). The Court has approved settlements that provided only a small recovery to a plaintiff class on that basis. *See Williams*, 2026 WL 1782163, at *7 ("In sum, the putative classes are giving up little and getting little in return, resulting in an 'adequate,' albeit likely inconsequential result."). And, of course, the Court wants to encourage the settlement of dubious or meritless claims.[2] Here, however, the Court presently has insufficient information to reach such a conclusion.

Finally, as the Court recently found in *Williams*, the proposed attorneys' fees are excessive. *Id*. Here, as in *Williams*, the actual recovery to the class members does not reflect any real success in terms of monetary or non-monetary benefit for the settlement class. Rather, the requested one-third fee (even putting aside that the "total settlement value" on which it is purportedly calculated is not based on actual settlement payments) is grounded only on counsel's "good faith" pursuit of Plaintiff's claims or, as Plaintiff's counsel argued, the risk of taking on contingent fees in general. As the Court explained in *Williams*:

> Plaintiffs' counsel seeks to justify their full "one-third" fee request based on their "good faith" in pursuing these cases. Yet, the relevant factor is success, not merely satisfaction of Rule 11. "Good faith" is a threshold requirement for filing and maintaining an action, not for the recovery of substantial attorney's fees, here totaling half a million dollars. Otherwise, attorney's fees would be recoverable in every case, regardless of the level of success. A "contingent" fee is meant to be just that, "contingent" on success (which is questionable here).

[2] In noting the benefits of appropriate settlements, the Court does not intend in any way to encourage an attorney business model that relies on the filing of a series of meritless claims to generate fees through nuisance or "cost of defense" settlements.

*Id*.

Similarly, accepting the argument that a full fee should be awarded notwithstanding the lack of success in a particular case because of the general risk that a case is unsuccessful would be perverse. The reason that Plaintiff's counsel receive a full one-third fee in *successful* cases (measured by the success of their clients, not their own) is that in other *unsuccessful* cases they don't receive a full fee or any fee at all. Arguing for a one-third fee in all cases regardless of success is nothing more than saying about a coin flip, "heads I win, tails you lose." Here, as detailed above, the Defendant's likely settlement payment would amount to no more than $25,000 to $35,000 which would in turn generate a one-third attorney's fee of $8,333 to $11,666, far below the $75,000 fee in the proposed Settlement Agreement. Further, no alternate lodestar calculation that might support a $75,000 fee has been offered. Therefore, Plaintiff's counsel's proposed attorney's fee is excessive and will not be approved.

In sum, as the Court stated at oral argument, the proposed settlement appears to be good for the Defendant and good for Plaintiff's counsel but not so much for the settlement class. The Court will not impose any settlement on the Parties or even suggest what terms of settlement might be appropriate. However, the Court will grant the Parties' Joint Motion to Stay (Doc. No. 13), which requests that the Court stay the litigation for a period of 60 days to allow the parties to pursue a settlement that the Court can approve, and wish them well in that effort.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. The Joint Motion for Settlement (Doc. No. 5) is **DENIED**; and
2. The Joint Motion to Stay (Doc. No. 13) is **GRANTED**. This matter is hereby stayed for a period of 60 days, including Defendant's obligation to file an Answer or

otherwise respond to the Complaint. On or before the end of that period, the Parties are directed to file a status report on whether the case will proceed and their proposal for a case management order in that event.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: August 20, 2026

Kenneth D. Bell
United States District Judge